IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

U. S. FOODSERVICE, INC.,

          Plaintiff,

v.                                CIVIL ACTION NO. 3:10-cv-00183

TIMOTHY DONAHUE, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are a Motion to Vacate Any and All Default and Other Judgments [Docket 42], filed by the defendant Timothy Donahue, and a Motion to Vacate Any and All Default and Other Judgments [Docket 45], filed by the defendant Barbara Donahue. For the reasons provided below, both motions are **DENIED**.

**I.    Background**

The plaintiff, U.S. Foodservice, Inc., filed this lawsuit on February 24, 2010. U.S. Foodservice alleged that a restaurant affiliated with the defendants, known as Almost Heaven Ribs, entered into an agreement with U.S. Foodservice for the distribution of food products to two of the restaurant's locations. According to the Complaint, Almost Heaven Ribs never paid the amounts due under the agreements. Count I of the Complaint asserted a breach of personal guaranty claim against defendant Timothy Donahue, based on a document entitled "Personal Guaranty" and signed in connection with food deliveries to the South Charleston restaurant location. (Compl., Ex. B [Docket 1-2].) Count II of the Complaint set forth an unjust enrichment claim against Timothy

Donahue based on the same conduct. Count III alleges a breach of personal guaranty claim against defendant Barbara Donahue, predicated on a "Personal Guaranty" agreement signed in connection with deliveries to the Barboursville location. (Compl., Ex. A [Docket 1-1].) Count IV asserted an unjust enrichment claim against Barbara Donahue.

On February 24, 2010, the Clerk issued summonses for both defendants. According to the plaintiff, it properly served Barbara Donahue with a summons and a copy of the Complaint by leaving a copy with her son at her residence in Ona, West Virginia, on February 26, 2010. The process server's signed return was then filed on the docket [Docket 7]. After Barbara Donahue failed to answer to the Complaint, the court directed the Clerk to enter a default against Barbara Donahue default on May 5, 2010, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The court further directed the Clerk to send a certified copy of the Order to the defendant. On May 26, 2010, the court entered a default judgment against Barbara Donahue pursuant to Rule 55(b) in the amount of $73,463.26, plus post-judgment interest at the legal rate of .35%. Once again, the court directed the Clerk to send a certified copy of the Order to the defendant.

In the meantime, the same process server who had served Barbara Donahue tried in vain to locate and serve Timothy Donahue. (Aff. of John K. Jarvis [Docket 52-1], ¶ 4.) Accordingly, on May 7, 2010, U.S. Foodservice filed a Motion for Authorization for Service by Publication [Docket 14] as to the defendant Timothy Donahue. The Motion was accompanied by a signed affidavit of the plaintiff's counsel attesting to the unsuccessful attempts to execute personal service on Timothy Donahue. (Aff. for Publication [Docket 14-1].) On May 13, 2010, the court granted the Motion by entering an Order to Serve by Publication [Docket 15]. On May 27, 2010, U.S. Foodservice filed the certificate of publication showing that the ordered notice had been published in the Herald-

Dispatch, a qualified newspaper in Huntington, West Virginia. Timothy Donahue failed to respond within thirty days, as required by the notice, and the court directed the Clerk to enter his default on June 24, 2010 [Docket 19]. On July 13, 2010, the court entered a default judgment against Timothy Donahue pursuant to Rule 55(b) in the amount of $58,226.70, plus post-judgment interest at the legal rate of .31%.

The plaintiff then attempted to execute its judgment. In October 2010, U.S. Foodservice obtained writs of execution directed at the defendants, and the United States Marshals Service served Barbara Donahue and Timothy Donahue with the writs of execution in October and November, respectively, of 2010. On December 3, 2010, the court appointed Magistrate Judge Cheryl A. Eifert to serve as a commissioner over a proceeding in aid of execution. On December 9, 2010, attorney William L. Bands entered an appearance on behalf of Timothy Donahue.[1] Another attorney from Mr. Bands' law firm, J. Patrick L. Stephens, entered an appearance on behalf of Timothy Donahue on January 5, 2011. Mr. Stephens also entered an appearance on behalf of Barbara Donahue on January 7, 2011.

On January 6, 2011, Timothy Donahue filed his Motion to Vacate Any and All Default and Other Judgments [Docket 42], and Barbara Donahue filed her Motion to Vacate Any and All Default and Other Judgments [Docket 45] on January 7, 2011. The parties have fully briefed the motions and the matter is now ripe for review.[2] Timothy Donahue primarily argues that the default judgment

---

[1] The defendants inform the court that Mr. Bands left his law practice on December 22, 2010. Nevertheless, he is still counsel of record in this matter because he has not filed a motion to withdraw as counsel.

[2] The defendants have filed a combined memorandum of law in support of the two Motions to Vacate and a combined reply memorandum.

against him must be set aside as he was never properly served with process because U.S. Foodservice's difficulty in serving him was largely its own doing. Barbara Donahue admits that she was served with process, but lays the blame for her failure to respond on her prior counsel, Bill Watson. She claims that she forwarded the Complaint to her counsel in Huntington, that she "thought that Mr. Watson would handle the case," but that she never heard anything further from him. (Aff. of Barbara Donahue [Docket 51], ¶¶ 6-7.) Barbara Donahue claims that she first learned of the default judgment in "late December of 2010 or early January of 2011," which prompted her to obtain new counsel. (*Id.* ¶ 8.)

U.S. Foodservice advances four reasons for denying the defendants' motions to vacate: (1) that both defendants were properly served with process; (2) that neither defendant can offer a meritorious defense to the claims asserted against them; (3) that the defendants failed to exercise due diligence in seeking to have the claims set aside; and (4) that the defendants cannot show they are otherwise entitled to relief under Rule 60(b) of the Federal Rules of Civil Procedure.

## II.     Standard of Review

The standard for whether a default *judgment* should be set aside, as opposed to the mere *entry* of default, comes from Rule 60(b) of the Federal Rules of Civil Procedure. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010). Rule 60(b) provides that, among other things, a court "may relieve a party ... from a final judgment" due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A motion under Rule 60(b) "must be made within a reasonable time," but a motion based on mistake, inadvertence, surprise, or excusable neglect cannot be made more than a year after the entry of judgment. Fed. R. Civ. P. 60(c)(1).

Although the Fourth Circuit has noted the increasingly liberal view of Rule 60(b) and has expressed a strong favor for resolving cases on their merits, district courts do not possess unbridled discretion to vacate default judgments. *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 842 F.2d 808, 810-11 (4th Cir. 1988). That is because default judgments implicate a strong policy interest in finality and repose. *See Colleton Preparatory Acad.*, 616 F.3d at 420. Accordingly, in assessing a motion to set aside a default judgment, a district court should consider: (1) whether the moving party has a meritorious defense to the action; (2) whether the moving party acted with reasonable promptness; (3) who bore responsibility for the default; (4) any unfair prejudice to the non-moving party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic. *See Augusta Fiberglass*, 843 F.2d at 811; *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987); *see also Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006) (setting forth the above factors in the context of a motion to set aside the entry of a default).

Although the Fourth Circuit has employed identical factors for considering both a motion to vacate the entry of default under Rule 55(c) and a motion to vacate a default judgment under Rule 60(b), "the burden on a movant seeking relief under the two rules is not the same." *Colleton Preparatory Acad.*, 616 F.3d at 420. Namely, "Rule 60(b)'s 'excusable neglect' standard is a more onerous standard than Rule 55(c)'s 'good cause' standard, which is more forgiving of defaulting parties because it does not implicate any interest in finality." *Id.* In short, "relief from a default judgment requires a stronger showing of excuse than relief from a mere default order." *Id.* (internal quotation marks omitted).

### III. Discussion

#### *A. Barbara Donahue*

Barbara Donahue maintains that the default judgment entered against her should be set aside because she forwarded the Complaint to her prior counsel, who neglected to answer. The court disagrees that Ms. Donahue has shown "excusable neglect" under Rule 60(b).

As an initial matter, the only factual support for this assertion is Barbara Donahue's affidavit, in which she avers that she "forwarded the Complaint to Bill Watson, an attorney in Huntington who has handled matters for me in the past." (Aff. of Barbara Donahue [Docket 51], ¶ 5.) She then states that she "*thought* that Mr. Watson would handle the case, and *thought* that Mr. Watson would contact me when I needed to act." (*Id.* ¶ 6 (emphasis added).) Ms. Donahue does not offer any reasonable support for those assumptions, however, as she states that she never heard anything further from Mr. Watson once the Complaint was forwarded to him. (*Id.* ¶ 7.) Furthermore, Ms. Donahue has not provided the court with any independent evidence of her communications with counsel. Consequently, I **FIND** that, even assuming that there could possibly be neglect attributable to counsel, it would not be "excusable," and thus Ms. Donahue bears responsibility for the default. Ms. Donahue did not take reasonable steps to ensure that Mr. Watson was actually handling her lawsuit. A party may not simply forward legal papers to counsel used in the past and then assume that such forwarding will be sufficient to excuse the duty to timely respond to a lawsuit.

In addition, Barbara Donahue's statement in her affidavit that she did not become aware of the default judgment against her until late December 2010 or January 2011 is belied by other materials in the record. Specifically, between May 5, 2010 and July 13, 2010, the court directed the Clerk to send at least four separate documents to Barbara Donahue via certified U.S. Mail to the Ona

address where she was originally served with process. Ms. Donahue has not asserted that she did not obtain these documents, nor does the docket sheet reflect that any of the items were returned as undeliverable. Furthermore, the Marshals Service served Ms. Donahue's husband with a writ of execution at her residence on October 28, 2010, and she does not contest receipt of that document. Because Barbara Donahue has not challenged her receipt of documents from the court that would have notified her earlier in 2010 of the entry of default and the subsequent judgment, I **FIND** that Barbara Donahue did not act with reasonable promptness is responding to the default.[3]

Furthermore, Barbara Donahue has not attempted to assert that she has a meritorious defense to the action, which is the first factor in the Fourth Circuit's analysis. Thus, I **FIND** that this important factor weighs against vacating the default judgment. Finally, I **FIND** that there has not been an adequate showing as to the remaining factors — any unfair prejudice to U.S. Foodservice, whether there is a history of dilatory action, and the availability of sanctions less drastic. In light of the strong showing required to set aside a default judgment under Rule 60(b), and due to the interest in the finality of judgments, I **FIND** that Barbara Donahue has not shown "mistake, inadvertence, surprise, or excusable neglect" that would support vacating the default judgment

---

[3] The defendants both maintain that they acted promptly because they have pursued relief under Rule 60(b) within the maximum one-year time limit set forth in the rule. *See* Fed. R. Civ. P. 60(c)(1). Their argument is undercut by the text and purpose of Rule 60, which first provides that a motion thereunder must be "made within a reasonable time." Fed. R. Civ. P. 60(c)(1). The defendants have no support for their conclusion, which the court declines to adopt, that the rule's one-year maximum time limit for seeking relief somehow transforms into a *per se* rule that a delay of up to one-year is presumptively reasonable.

against her.[4]  Thus, the court **DENIES** her Motion to Vacate Any and All Default and Other Judgments.

### B.     *Timothy Donahue*

Timothy Donahue makes two primary arguments in seeking to vacate the default judgment against him.  First, he maintains that he was not properly served with process.  Second, he suggests that he would have a meritorious defense to U.S. Foodservice's claim against him, as he did not understand the implications of the "Personal Guaranty" that he signed.  Neither argument is persuasive.

As to service, Mr. Donahue makes the rather bold assertion that "he was never served." (Defs.' Reply Mem. 4.)  That is not actually true, as the court ordered service by publication on May 13, 2010, and it is unquestioned that U.S. Foodservice thereafter served Timothy Donahue by publication.  Rather, Mr. Donahue's point is that service by publication should have never been

---

[4] This holding obviates the need to fully decide a difficult legal issue raised by the defendants, *i.e.*, whether a client bears responsibility for a default when the attorney is allegedly to blame.  The Fourth Circuit has held that an "attorney's negligence qualifies as a 'mistake' or as 'excusable neglect' under Rule 60(b)(1)." *Augusta Fiberglass*, 843 F.2d at 811; *see United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982); *but see Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 412-13 (4th Cir. 2010) (concluding that "excusable neglect" not established even though attorney was to blame).  There is some tension between the holdings of the first two cases and the Supreme Court's announcement that parties must be held accountable for the acts and omissions of their attorneys.  *See, e.g.*, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) ("[W]e have held that clients must be held accountable for the acts and omissions of their attorneys."); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962).

Because Ms. Donahue did not reasonably ensure that Mr. Watson was handling her case, and in light of her failings on the other factors described above, the court need not further address this issue, which appears to be unsettled in the Fourth Circuit.  *Compare Robinson*, 599 F.3d at 414 (Davis, J., concurring), *with id.* at 421 (King, J., dissenting) (discussing the Fourth Circuit's "longstanding recognition" that the responsibility for attorney neglect should be borne by the attorney, not the client).

permitted. He argues that he was not attempting to evade service, that the difficulties in serving him were due to U.S. Foodservice's own actions, and that the affidavit in support of service by publication was insufficient. These assertions lack factual and legal merit.[5]

Service of process in this case is governed by Rule 4(e) of the Federal Rules of Civil Procedure. That rule allows the plaintiff to follow "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The relevant state is West Virginia, and thus we look to Rule 4 of the West Virginia Rules of Civil Procedure to determine the acceptable methods of service.

Rule 4 of the West Virginia Rules of Civil Procedure allows service by publication if the plaintiff files an affidavit with the court stating, *inter alia*, that "the plaintiff has used due diligence to ascertain the residence or whereabouts of the defendant, without effect." W. Va. R. Civ. P. 4(e)(1)(C). In this case, U.S. Foodservice submitted an affidavit signed by its outside counsel, detailing in fifteen numbered paragraphs the plaintiff's attempt to locate and serve Timothy Donahue. (Aff. for Publication [Docket 14-1].)[6] Ultimately, the affiant asserted that, "over a period

---

[5] In their reply memorandum, the defendants state that U.S. Foodservice "has never filed any affidavits from its process server." (Defs.' Reply Mem. 5.) That is not true, as the process server's affidavit is attached as an exhibit to U.S. Foodservice's response memorandum. (Aff. of John K. Jarvis [Docket 52-1].) The affidavit, which incorporates by reference the process server's May 2010 report (*id.* ¶ 6), detailing his attempts to serve Mr. Donahue, undercuts the defendants' argument that U.S. Foodservice was to blame for its service problems.

[6] The defendants criticize, without any citation to authority, the fact that the affidavit in support of publication was signed by outside counsel, rather than by the process server. This distinction is not drawn from the text of Rule 4, which merely requires "the plaintiff" to file an affidavit. Obviously, a corporate plaintiff (like U.S. Foodservice) can only swear out an affidavit through an agent, such as a lawyer.

of two months, [the process server] expended 25.5 hours attempting to locate and effect service on Mr. Donahue, amounting to $1,593.42 in costs and expenses incurred by plaintiff." (*Id.* ¶ 14.)

In light of these facts and authorities, the court rejects Mr. Donahue's attempt to challenge the efficacy of service of process on him. Pursuant to the court's order and the clear meaning of West Virginia law, service was effective by publication, and proof thereof was made by filing the publisher's certificate of publication with the court. *See* W. Va. R. Civ. P. 4(e)(1)(E). Nevertheless, Mr. Donahue attempts to argue that he did not actually *know* about the lawsuit until later in 2010. In the memorandum of law in support of his motion, Mr. Donahue states that he first learned of the lawsuit on November 19, 2010. (Defs.' Mem. of Law 3.) That assertion, however, is not itself evidence and is not supported by any evidentiary material in the record.[7] Mr. Donahue's affidavit only states that he "learned about the judgment when [he] attempted to refinance a piece of property, and [he] learned that there was a judgment lien." (Aff. of Timothy Donahue [Docket 53], ¶ 15.) Accordingly, I **FIND** that Timothy Donahue has not proven by competent evidence that he does not bear responsibility for the default.

As to his reasonable promptness in responding to the default, Mr. Donahue claims in his memorandum of law that he contacted and met with prior counsel, William Bands, on December 6, 2010. (Defs.' Mem. of Law 3.) The court is aware that Mr. Bands entered an appearance on Mr. Donahue's behalf on December 9, 2010, but Mr. Donahue's affidavit says nothing about his attempt to engage counsel in December, or what transpired after Mr. Bands entered an appearance but then

---

[7] Indeed, the court reminded the parties of this very concept just last month. *See* Order of Jan. 20, 2011 [Docket 50] ("[S]tatements by attorneys — whether in motions, briefs, or at oral argument — are not actually *evidence*. *See Jardine, Gill & Duffus, Inc. v. M/V Cassiopeia*, 523 F. Supp. 1076, 1081 (D. Md. 1981) ....").

allegedly failed to move to set aside the default judgment. In light of this paltry factual record, I **FIND** that Timothy Donahue has not shown that he acted with reasonable promptness in responding to the default judgment.

Mr. Donahue has made even less of a showing on the other factors. Unlike Barbara Donahue, he does make some attempt at identifying a meritorious defense, but he does not offer any legal support for his position. Specifically, he contends that he did not know that he was signing a personal guaranty, that he never owned or had any authority to bind Almost Heaven Ribs, and that he simply signed "a document that was shoved under [his] face." (Aff. of Timothy Donahue [Docket 53], ¶ 9.) As a factual matter, the court finds it doubtful that Mr. Donahue has actually tendered a meritorious defense, given that he affixed his signature to a separate portion of an agreement entitled, **"PERSONAL GUARANTY,"** in bold typeface and all caps. Legally, U.S. Foodservice cites West Virginia authorities for the proposition that the failure to read a contract does not excuse the obligor, as well as the principle that one who "fails to read a document to which he places his signature does so at his peril." *Sedlock v. Moyle*, 668 S.E.2d 176, 180 (W. Va. 2008) (internal quotation marks omitted). Because Mr. Donahue does not offer any retort to these well-settled principles of law, I **FIND** that he has not demonstrated the existence of a meritorious defense.

Finally, as with Barbara Donahue, the court **FINDS** that neither party has made a sufficient showing as to the remaining factors (any unfair prejudice to U.S. Foodservice, whether there is a history of dilatory action, and the availability of sanctions less drastic). Thus, in light of the policy interests behind finality of judgments, and because Timothy Donahue has not made the onerous showing necessary to overcome that finality, the court **FINDS** that Timothy Donahue has not shown

"mistake, inadvertence, surprise, or excusable neglect" for purposes of Rule 60(b) relief. Accordingly, the court **DENIES** his Motion to Vacate Any and All Default and Other Judgments.

**IV.     Conclusion**

Pursuant to the foregoing, the courts **DENIES** the Motion to Vacate Any and All Default and Other Judgments [Docket 42], filed by the defendant Timothy Donahue, and **DENIES** the Motion to Vacate Any and All Default and Other Judgments [Docket 45], filed by the defendant Barbara Donahue.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, to Magistrate Judge Eifert, and to any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:     February 18, 2011

Joseph R. Goodwin, Chief Judge